HARRIS STRUCTURAL STEEL COM-
PANY, Inc., a Corporation of the State
of New York Authorized to Do Business
in the State of New Jersey, Appellant,

v.

UNITED STEELWORKERS OF AMERI-
CA, AFL–CIO, LOCAL 3682, and United
Steelworkers of America, AFL–CIO, an
Unincorporated Association.

No. 13626.

United States Court of Appeals
Third Circuit.

Argued Nov. 3, 1961.

Decided Jan. 22, 1962.

William W. Lanigan, Bound Brook, N.
J. (M. Harvey Smedley, New York City,
on the brief), for appellant.

Abraham L. Friedman, Newark, N. J.
(Samuel L. Rothbard, Newark, N. J.,
Rothbard, Harris & Oxfeld, Newark, N.
J., on the briefs), for appellees.

Before BIGGS, Chief Judge, and Mc-
LAUGHLIN and FORMAN, Circuit
Judges.

BIGGS, Chief Judge.

Invoking the aid of the New Jersey
Uniform Declaratory Judgments Act, 2A
N.J.S.A. 16–50 et seq., the plaintiff appel-
lant, Harris Structural Steel Company,
Inc., sued the defendant-appellee, Unit-
ed Steelworkers of America, AFL–CIO,
Local 3682, and certain union officers in
the Superior Court of Middlesex County,
New Jersey, seeking to have a grievance
resulting from the demand of members
of the Local for "Christmas gifts", in an
amount and of a nature explained herein-
after, declared to be outside the scope of
a collective bargaining agreement en-
tered into by the Harris Company and
the United Steelworkers of America,
AFL–CIO, the International Union, and
therefore outside the arbitration provi-
sions of the agreement.

The defendants petitioned the court
below to remove the case basing federal
jurisdiction on Section 301 of the Labor
Management Relations Act of 1947, 29 U.
S.C.A. § 185, and removal was effected.[1]

---

1. An answer and a counterclaim and af-
fidavits were filed. The court below
struck certain individual defendants, of-
ficers of the Local, from the record and
ordered the International Union, United
Steelworkers of America, AFL–CIO, add-
ed to the record as a party defendant.

The case was decided on a motion for summary judgment made by the defendants. The court delivered an oral opinion, and judgment was entered dismissing the complaint on the merits and in favor of the defendants on their counterclaim. Arbitration of the grievance was ordered. The following operative facts, we believe, cannot be disputed.

Since 1946 the International Union has been and still is the certified collective bargaining agent of the production and maintenance employees of the Harris Company. Since 1946 the International has negotiated collective bargaining agreements with that Company. On March 14, 1960, the Company entered into a new collective bargaining agreement with the International. This agreement was in effect during December 1960 and January 1961 and will not expire until July 31, 1962.

Article I, Section 1 of the 1960 collective bargaining agreement between the Company and United Steelworkers of America, AFL–CIO, provides: "The Company recognizes the Union as the exclusive representative of all the Employees for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment."

Article VII of the agreement states: "Adjustment of Grievances. Section 1. Should differences arise between the Company and the Union or between the Company and any of its employees as to the meaning and application of the provisions of this agreement or as to any question relating to the wages, hours of work and other conditions of employment of any employee there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle them promptly and in accordance with the provisions of this agreement and in the manner hereinafter set forth." Step 5 of Article VII provides: "In the event the dispute shall not have been satisfactorily settled, the matter shall be appealed to the American Arbitration Association. The final decision of the Arbitrator designated by the said Association and accepted by the Company and the Union shall be binding."

Section 3 of Article VII states: "During the term of this agreement neither the Union nor any employee shall (a) engage in or in any way encourage or sanction any strike or other action which shall interrupt or interfere with work or production at any of the shops or (b) prevent or attempt to prevent the access of Employees to any of the shops. During the term of this agreement the Company shall not engage in any lockout of employees at any of the shops. The Company may suspend and later discharge any Employees who shall violate any provision of this Section."

In every year since 1946, in the period just before Christmas, the Company has granted to each employee in the bargaining unit an amount of money computed on the basis of days or hours of pay, at the employee's rate of pay, for each month or year of his service. The record is not too clear as to the precise rate at which this amount of money was calculated but there is no room for doubt that whatever the formula, the amounts were calculated in terms of wages. In December 1960, however, the Company made a grant of money in a substantially reduced amount, approximately 50% of that made in December 1959, to each employee in the bargaining unit.

The present dispute between the Harris Company, the Local and the International is narrow in scope. The Company maintains vigorously that the sums granted these employees were given as Christmas gifts and were not wages to which they were entitled. The Unions and the employees through the Unions, claim to the contrary. The Unions insist that this grievance of the employees is subject to arbitration under the collective bargaining agreement and in particular under the provisions of Article VII set out above. The Company asserts that uncontroverted evidence demonstrates that the parties to the collective bargaining agreement did not intend to include the subject matter of a grievance such as

this within the agreement and hence within the provision for arbitration. We have examined the record carefully. Allegations of the affidavits filed on behalf of the Company are contradicted by an affidavit filed by a staff representative of the International. The extensive documentary evidence offered by the Company is not decisive. Were it not for the state of the law we would say that the case was not one which could be disposed of properly on motion for summary judgment but we think that the law in this case is so plain as to permit no alternative.

Five points are very clear: first, the Company recognizes the Union as the exclusive representative of the employees in the bargaining unit in respect to rates of pay and wages; second, the issue of bonus payments is not specifically excluded from the grievance provisions of the collective bargaining agreement; third, the grievance and arbitration article of the agreement expressly includes any question relating to wages, in addition to "differences * * * as to the meaning and application of the provisions of this agreement"; fourth, the sums granted, whether given or paid, to the employees at or near the Christmas season, were estimated in terms of wages; and, fifth, the agreement contains a no-strike provision.

It follows that this case is ruled, as the court below correctly indicated, by Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) and by United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In Lincoln Mills, 353 U.S. 455, 77 S.Ct. 917, the Supreme Court made it clear that an "agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike." Mr. Justice Douglas stated: "Viewed in this light, the legislation [Section 301 of the Labor Management Relations Act] does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." See also United Steel Workers of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

Wages are specifically included in the arbitration article of the collective bargaining agreement; the additional money grants are calculated in terms of wages and are not specifically excluded from the article. Mr. Justice Douglas stated in the Warrior opinion, 363 U.S. 581, 80 S.Ct. 1352: "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement." The conclusion is irresistible that the grievance is arbitrable and that the court below was correct in so holding. The judgment will be affirmed.